Arguments not to exceed 30 minutes per side Mr. Kissinger for appellant. May it please the court, counsel, I would ask to reserve 10 minutes of my argument time for the purpose of rebuttal. In denying Miller's Rule 60B motion, the district court abused its discretion in five main areas. The first of these was it attributed only limited weight to the United States Supreme Court's decisions in Martinez and Trevino, notwithstanding the fact that even though procedural in nature, those cases were founded in the bedrock principles of our adversarial system, which are, which entitle a criminal defendant to the effective assistance of counsel. Had Martinez been handed down by the Supreme Court before this came up in our court? Martinez had been handed down by the Supreme Court, Your Honor. However, the law in the Sixth Circuit at the time, even at the time, well, the law in the Sixth Circuit was up until just, I believe, three weeks prior to the time Mr. Miller filed his petition, was that Martinez did not apply in Tennessee. That was the law in Hodges. The, after, after Martinez... The Supreme Court hadn't said that. No, they had not. No, in this circuit. It was not until after, it was not until after the court issued its decision in Trevino that the panel in, that the panel in Hodges withdrew its opinion, removing that absolute bar, Sixth Circuit bar, to presenting the claim, and Mr. Miller filed his petition. Mr. Miller actually filed his 60B petition before this circuit ever affirmatively held that, or that Martinez was recognized or did control cases coming out of Tennessee. In fact, when Mr. Miller filed his petition, the state responded by saying, again, Martinez does not apply in Tennessee. Well, they don't have to agree with you. They don't agree with you in this case. No, absolutely not, Your Honor. But we, we, again, are bound by the decisions of this court, and as soon as, as soon as the Hodges' opinion was withdrawn, we filed. You know, go ahead. You know, Martinez and Trevino provide you an opportunity, but they do not, by themselves, grant you any relief, and I'm mostly concerned about whether you can make the appropriate showing to obtain relief. Well, and, and I appreciate that opportunity, Your Honor, because I agree totally with the court, and I think that the law is, is pretty clear that Martinez, in and of itself, doesn't provide, I was thinking that was me, and I was going, what did I do? I'm sorry, Your Honor. I don't think it's anything we did, either. I was waiting for the lights to come down or something. Let, let me go back to the subject of the court's question, which is, which is, I agree totally, which is, again, why I think it's important to talk about the other factors that created the abuse of discretion in this case, because the next one is actually the most important factor, which is that, because it's one that a lot of the, a lot of the district court's opinion was based upon. The district court found that Mr., Mr. Miller's underlying ineffective assistance of counsel claim was insubstantial, because according to what the district court said, Mr. Miller's trial counsel had sought the assistance of an expert witness, and that he had been denied it at the trial court, and that he appealed the denial of that, the denial of that expert witness at the time of resentment. The fact is, and what the record shows, is that is simply incorrect. The district court cited no basis for, for that finding in its opinion, and the state, in its brief, while, again, repeating what the district court said, could point to nowhere in the record where Mr. Olive requested the assistance of a mental health expert to assist him in the process. So I've got, I'd like you to, I'm going directly to this, because this is my concern. Let's assume the court's totally wrong about Martinez. It absolutely applies. The court's wrong about the timing. Your client absolutely is in there. He's entitled to have this claim considered. Let's say counsel did or didn't do it. So do, do I misunderstand that the underlying claim is the same ACC claim, or ACCI claim, that it still is a claim that counsel didn't get the independent expert? No. Okay. Absolutely not, Your Honor. The claims are completely different. The claim which this court has actually previously considered, and contrary to what my opinion was at the time the Supreme Court has affirmed, which is that Ake was not applicable at the time of, of Gilface, is really irrelevant. Ake's applicability is irrelevant to this case. Because at the time of resentencing, Ake had been decided. And Mr. Miller's claim is not that he was entitled to anything more than what Ake allowed him. His claim is that trial counsel was obliged, because Ake had already been decided, to what Ake provided him. Not that it was necessarily an independent expert, or a court expert, or any other kind of expert. Okay, so tell me factually, are you saying, okay, he didn't have an expert at the resentencing? That is absolutely correct, Your Honor. He didn't have an expert at the resentencing. He didn't request an expert at the resentencing. It's not that... He had an expert who examined his client, who said that he was competent, right? Your Honor, no. Not at the time of resentencing. I'm talking about earlier in the case. Well, we don't know. Do we know what that expert would have said had he testified? Is that in the record? Your Honor... I know what your experts say. Right. What would this expert say that he used, the neutral expert? If indeed, and unless we are to assume that psychological testimony is simply, really has no value whatsoever, we must assume that it has an objective basis. If indeed mental health testimony has an objective basis, then all experts should reach at least similar conclusions. They don't, do they? They may not, Your Honor. But in most cases where we see that, we see experts presented with different background information, with different resources at their disposal. For example, we will see a state expert will often not have extensive family histories, will not seek them, those kind of things. Here, the evidence we have is the evidence, the unrebutted evidence in the record, which is provided by, which is provided by Mr. Miller's experts. When we look at that evidence, when we look at that evidence... This is provided by who? It's unrebutted, Your Honor. There is, the state introduced no evidence, no evidence during federal court proceedings to rebut the opinions expressed by the experts. Two experts, not the expert that he had access to during the first sentencing, right? Or is he dead? Does anybody know? Your Honor, I honestly have no knowledge to that. You didn't try to make a record on that at the 60B, did you? No, no, Your Honor. No, Your Honor. And because basically every ineffective assistance counsel claimed that this court is considered, the proof is not established by going back and retaining the expert at the time of trial, but by the presentation of experts during the state post-conviction process, which of course wasn't done here because of the ineffective assistance of state post-conviction counsel. You don't present any testimony that an expert on your behalf would give if this were unwound. Well, I mean, in order to evaluate whether this was prejudicial, we would need to know what evidence you could have procured in order to establish that it made any difference, whatever. But you've not made an effort to do that. Your Honor, that's not correct. We submitted reports from each affidavit, and those reports are in the record. At what point? In the appendix, beginning at pages 32, the report of Dr. Stewart, in appendix 57, the report of Dr. Hyde, and appendix 64, the report of Dr. Lisak. Was that presented in connection with this motion or at an earlier point in time? It was presented in connection with the A claim, which was the only exhausted. Oh, it was previously submitted, and we had it the last time around in this case. But it was never considered, Your Honor, because we never reached that issue. It was never considered, which is an important part because the court tries to rely on the McGuire decision. In the McGuire decision, the entire evidence that he relied on had actually been considered for the very purpose it was being submitted, which was to establish prejudice. Here, the evidence had never been considered. The contents of those things had never been considered by any court because this court determined, as I said, correctly, as it turns out, that A did not apply. I am so confused. I'm sorry. After the resentence, or let's say, okay, at the resentencing, there was no mention of an expert. Is that what you're saying? At the time of resentencing, the only mention of an expert by Mr. Olive was when he came to the court and said what I said to this court, which is, hey, because you didn't give me an expert at the time of trial, and now we've got this A decision, I'm entitled to a new trial. When it came time for him to present his case for Mr. Miller's life, he didn't even ask for one. Okay, so he relies on A for a new trial. Right. Okay, and then on appeal. Never raises the issue, except in the context of I'm entitled to a new trial. Okay. And then, okay, but we still have to get to prejudice. And, Your Honor, And you're assuming that had he asked, the judge would have given him what he refused to give him before. But, Your Honor, in between trial and resentencing, the situation at resentencing was completely different than the situation at the original trial. At resentencing, A had been rendered. A was controlling, and the judge, yes, we are presuming that the judge would have followed the directives of the Supreme Court of the United States. But he decided that A doesn't give you the right to an independent expert. Again, Your Honor, we're saying that he's in effect asking for any expert. Not an independent expert, any expert. He failed to ask for any expert whatsoever. Not a court expert, not a neutral expert, not an independent expert, no expert. He asked for no expert assistance whatsoever at the time of resentence. But didn't he already have all, again, I'm sorry if I don't really understand the facts, but I was under the impression that he earlier asked for an independent expert that was denied. And it was denied on the basis that the trial court believed he wasn't entitled to one. And the trial court was correct. And early on in the proceedings, an independent expert was appointed instead. Correct. And at the time of resentencing, as counsel states in his affidavit submitted in federal court in support of this motion, counsel never returned to that expert and said, hey. Now, well, of course, he hadn't been appointed to represent him. He was no longer assisting him because his assistance was over. It ended at the time of the trial. And he didn't go to the judge and even say, hey, give me, I think it was Dr. Gee, perhaps, give me back that independent, let me have the assistance of the independent expert again. He didn't even ask for that. He asked for no help whatsoever. But why do you think that was going to be any more helpful than it was at trial? Because at sentencing, the issues are different. Now, as it turns out, as it turns out, an expert who were properly provided, an expert who was provided with, who counsel actually cooperated with, who counsel provided information to, is one of the things, Mr. Oldstein, in his affidavit, which was I never gave the independent expert anything. Never did what? He never provided him with background information. He didn't tell the court-appointed expert about Mr. Miller's life history or any of that kind of information. That's not the claim here. I understand. It's not the claim, Your Honor. Okay. Let me ask you another question. And, by the way, I'm sorry, I have now found the declarations that I didn't think were in here. I'm sorry. They were very easy. No, they were very easy to find. And I'm sorry that I just overlooked them previously. But in any event, I found them and looked at them. The trial court had, you're relying here on a notion that trial counsel, even when he's previously been denied an independent expert, has to reiterate that at every stage of the proceedings without regard to his own professional evaluation of the likelihood of success or the extent to which that would be helpful at this point. And that's basically the argument, correct? Your Honor, except I think one thing we need to recognize about the order here is we also have a corresponding thing that throughout this entire period of time, Mr. Olive is saying vis-à-vis Gilfay's, Mr. Olive is saying. Sorry, I'm losing you. During this entire period of time, from basically from the time of trial all the way through resentencing, Mr. Olive is repeatedly telling the court, I was denied the assistance of an expert at the time of trial and I needed one. He knew that he needed an expert and he knew that he needed an expert and he still didn't get one at the time of trial. But if he'd have called us Dr. Gee at the time of resentencing, he wouldn't have been of much help, would he? You don't know that, Your Honor. We don't know that because we don't know what Dr. Gee would have done if, well, we don't know specifically what he would have done. We know only what a competent mental health expert would have done and that's what we presented to the district court. You're not saying he was incompetent. Dr. Gee, he was an employee of the state, wasn't he? Again, Your Honor, that has nothing to do with this claim. Well, it does have something to do with this claim because the deficiency of counsel's performance depends on whether he made, I mean, if he made an evaluation of Dr. Gee and thought that Dr. Gee had done an adequate job or he thought that Dr. Gee was a competent expert then and he thought the jury were more likely to believe Dr. Gee, I mean, all those things would have figured into his evaluation of whether or not he should reiterate his request for an independent expert at sentencing. And your claim is not that he didn't provide Dr. Gee with the information that Dr. Gee needed to form his opinion. Your claim is he didn't reiterate that request at the resentencing stage. But Mr. Olive's affidavit. What? Mr. Olive's affidavit submitted to the federal court states that at the time of resentencing, he knew that he needed the assistance of a mental health expert. Not that he... Well, of course he knew. He'd asked for one before. And that's our point. That does not render his failure to request one necessarily deficient. Or prejudicial. Why do you think the judge would have granted it to him? That's what I don't understand. Again, Your Honor, and I'm not sure what I'm not making clear here, but at the time of resentencing, unlike at the time of trial when he was denied, at the time of resentencing, the judge was required to provide him with the assistance of a mental health expert. But he already had it. That's what I'm not understanding. He had it. He had the assistance of a mental health expert for the purpose of guilt phase. Well, same one would apply for the other two. There's not any difference between the two. There's a difference in the way the evidence can be used, but there's not any difference in the expert. Yes, Your Honor, because expert testimony going to guilt and expert testimony going to the mitigation of a sentence of death are two distinct things. Of course they are. But you've got the expert. You've got the guy who can give both. Your time is up, so why don't you talk about this during rebuttal. Well, can I just, as long as we're, I don't, okay. When he was resentenced, did either side introduce any psychological testimony? No, no, Your Honor. Neither, so no one used anything from that person? No. However, as the Supreme Court recognized in Sears, as well as many other decisions, the assistance of a mental health expert for the purposes of sentencing is critical. He was needed. There's no doubt that he was needed, and there's no doubt that he wasn't asked for. Most of the case law, and in fact most of the cases, dealing with this type of evidence in death penalty proceedings, most of the case law articulating standards for counsel, most of that very much, most if not all of that, very much postdates Mr. Miller's conviction in 1982, doesn't it? Well, I think that's correct, but Ake makes equally clear, Ake also states that the assistance of a mental health expert is critical to, critical to a defendant's right to a new trial. So that's in Ake itself. And you're saying that prior expert was completely absent from these proceedings, so it wasn't a matter of having his own expert, it was having any expert at all? His assistance was not re-sought. Mr. Olive didn't re-seek, didn't ask for his assistance in this new proceeding. No, he did not, Your Honor. We'll hear from your experts. Thank you, Your Honor. May it please the Court. I'm Jennifer Smith with the Tennessee Attorney General's Office, representing the warden. The district court did not abuse its discretion in denying the Rule 60b motion in this case, and in fact very closely followed multiple decisions by this court, which found that Martinez and Trevino in and of themselves do not establish the extraordinary circumstances necessary to warrant relief under Rule 60b. The district court actually cited the McGuire decision and Gonzales for that proposition. But the court went even further than that and weighed a number of equitable factors, recognizing McGuire's instruction that other factors could tip that scale. And to be clear, the petitioner came to the bar in default already. So already the scales are tipped against him. So what he has to do in order to get relief under Rule 60b is to show equitable circumstances, extraordinary circumstances that would warrant relief. What do you mean by in default already? He's in default because the claim that he wishes to receive federal review of was defaulted when he came to federal court to begin with. So he already comes to the table in default. I know, but it's only because we had not recognized that Martinez applies, right? It's because he failed to present those claims in the state court for consideration in the first instance. I guess it depends on how you look at Martinez. I would say that he was in default and that Martinez provides an exception to the default, but it doesn't make him not in default. But I don't know if Judge White is correct. That's my point. But that's the whole purpose of the question is whether he's saved by Martinez Trevino. By definition he's in default, otherwise we wouldn't be talking about it. I would suggest that the question is, and I agree, that if he was before the court in the appropriate procedural posture, then the question would be whether Martinez would allow him to avoid the consequences of his default by relying on some deficiency of his post-conviction counsel. The question here is not whether Martinez allows him to avoid his default. The question is whether he presented in a post-judgment posture appropriate extraordinary circumstances to warrant relief from a final judgment. And that's the question that the district court considers. So it's more than just whether Martinez allows him relief. The question is whether all of the circumstances, because Martinez in and of itself doesn't do that, and this court has said that. So he's got to come to the court with more. So our position is the district court, first and foremost, recognized the controlling authority in McGuire and in Gonzales, considered a number of factors, the fact that there were no new factual developments. There were a couple of affidavits presented of Mark Olive and trial counsel and of post-conviction counsel, but the district court looked at the content of those affidavits and found that they really didn't present any new allegations other than what they had already said, that counsel said, I didn't fully investigate this, I didn't ask for this when I should have on resentencing. So that's not really anything new in terms of a factual development. There's no new constitutional law. This is clearly an equitable proceeding. I think what he's saying is that his lawyer was ineffective for failing at the time of sentencing to ask the trial judge for the, I guess, rehiring of this expert, neutral expert, to testify in the sentencing. Is that what their position is? That's what it sounds like. That's my understanding of their position, Your Honor. What's wrong with that? I think the problem with that is, and I think the district court recognized this as well, and this is the way I read the record about what happened. So at the original capital trial, petitioner's counsel went to the court, trial counsel went to the trial court, and asked for an independent expert. So bear in mind early on in the case, counsel asked, number one, for there to be an evaluation for competence. The trial court granted that, and Mr. Miller was evaluated by a state-employed expert who was independent. He wasn't a trial expert. He was an independent expert for the purpose of competence. That was Dr. Gee. That expert came back with a conclusion that there was no mental disease or defect that rendered him incompetent under the Tennessee standards. So he found him to be competent for trial and not insane at the time of the offense. That was the determination of the expert. Even before . . . That report was given to defense counsel. Yes. That report was in the form of a letter. So that was provided to the government and to defense counsel. Even before that report, Dr. Gee had actually evaluated him before that and came back with a conclusion that David Miller was a sociopath and was competent to stand trial. So that was Dr. Gee's opinion based on two separate evaluations of the petitioner after the crime. So counsel asked for an evaluation, got it, went back to the court. This is pretrial, the first trial. Asked for funds for an independent expert to, number one, establish insanity because he had decided that insanity was his best defense given the circumstances of the crime. And in the event that sentencing was necessary, to be used to develop mitigation at sentencing. So it was twofold. And this is in the appendix at page 18, that first motion, the pretrial motion. Trial court denied that, said he didn't have authority to grant the additional expert and the petitioner had already had the access to an independent expert through Dr. Gee. So it's in a way inaccurate to say he didn't ask for one at sentencing. Well, I think the allegation is he didn't ask for it at resentencing. Oh, okay. So this is in the first time. So the first time around he asked for both and the trial court denied it. At trial, the petitioner argued, defense counsel argued, that just the circumstances of the crime in and of themselves demonstrated insanity because no sane person would do these kinds of things. The state presented the testimony of Dr. Gee in rebuttal. So that was in the sentencing part? That was presented at guilt, I believe, at guilt. So the jury had that before? The jury had that before. And trial counsel also took advantage of Dr. Gee to establish the fact that to use his expertise to talk about the effects of LSD on the system and the fact that it can cause you to act in certain irrational ways. So defense counsel was actually able to use Dr. Gee to buttress his theory of the defense as well. Did he testify in person, Dr. Gee? He did at the trial, at the initial proceeding. So the petitioner was convicted and sentenced to death. On the initial direct appeal, defense counsel challenged the denial of the request for expert services, and the Tennessee Supreme Court rejected that argument. I want to explore another kind of avenue of view, which I sort of talked to Mr. Kissinger about at the very end. What was the date of Mr. Miller's resentencing? The resentencing happened, I believe, it was in 1985. Okay. 1985. And how do we evaluate deficiency in light of existing precedents at that time? Yes, I think so, because you have to evaluate it from Kevin's perspective. As opposed to interlaying all the subsequent development. That's correct. Yes. Okay. Am I correct that all of the many, many cases that deal with this kind of mitigation evidence, the vast majority, if not all of them, come post-'85. Is that right or wrong, or do you know? I don't know. I mean, obviously Mr. Olive viewed the Aki decision as sort of a watershed decision, as a landmark decision. I did not think about this until I was out here on the bench. But my impression from my years on this court is that there's been very much a developing. The Supreme Court sort of started it, perhaps, in Wiggins. Then there's been very much a developing standard of competence for death penalty cases, which typically includes both lay and expert testimony about difficult childhood, traumatic experiences, mental health issues as a result of that. My impression is that that has all come about subsequently, but I'm not sure enough of that to say. Well, Mr. Olive recognized, even in the initial trial, even before Aki was decided, the importance of mental health to his case. He was aware of Mr. Miller's background, difficult childhood. He presented lay testimony to develop that. He was aware of the potential benefit for an expert. That's why he asked for it the first time around. He asked for it unsuccessfully. He appealed it unsuccessfully, but he did gain a retrial on a separate issue. So when he went back on retrial, between the time of the Tennessee Supreme Court's decision, first decision, and the retrial, Aki was decided. So at that point, Mr. Olive went back to the trial court, armed with this new Supreme Court decision that he viewed as giving him the very relief that he had asked for the first time around, and he said to the trial court, your judgment is not final. This is a new decision of the U.S. Supreme Court. My entire conviction is illegitimate and invalid because it's based on a due process violation, according to Aki. Basically, he renewed his Aki request by asking for a new trial. He wanted the whole barrel of wax right there. So he didn't. So I agree with Mr. Kissinger that he didn't come back on retrial and say, your Honor, I would like an expert. I need funding under Aki for an expert for sentencing. He went back to the trial court and said, your Honor, my entire conviction is invalid under Aki because I'm entitled to expert assistance. I want a new trial. One second. So when the judge initially denied the expert, was it because the judge concluded you're not entitled to an expert, or was it because the judge concluded that you already got your expert? I think the first time around it was without explanation, I believe. I don't know the answer to your question, but my memory is that the first time, and I'm assuming you're talking about the first trial, was that the request was denied without explanation. The reason I'm asking is that it would seem to be relevant because if the judge is saying, look, you already have your expert, then Aki doesn't make much of a difference. But if the judge is saying you're not entitled to an expert, then it seems that Aki makes all the difference in the world. And why wouldn't – I mean, that's one question. And then the other question is, if you're saying it's now clear that we have this constitutional right and you didn't honor it in the trial, why wouldn't counsel also say, but even if what we had is enough, we're at sentencing now, and I need the help of an expert? I mean, are you saying that it wasn't clear that he was entitled at that point to the help of an expert, or are you saying he already had it? Well, he did already have it, just as a matter of fact. He did already have an expert at the first trial. But to answer your question, I mean, I think when counsel is faced with the Aki decision, you're looking at a question of how best do I present this to the state court. I can either ask for the whole shooting match, or I can do the other. It's not an either-or. There's no reason why you'd ask for one, and if you don't get it, you'd certainly insist on the latter. Well, I mean, I think that's a way to look at it. I think he viewed Aki as a landmark decision and something that he could travel on for the entire conviction. And that's the – I mean, what you're talking about is a strategic decision. How best do I present this? How do I go about this? He decided he was going to attack the whole thing, and he was going to present it in that way. He was going to present it in a way that this completely undermines my conviction. I'm entitled to independent experts, and I'm going to ask for everything. And that's exactly what he did. Now, I guess he could have come back after the court said no and said, well, can I just have it for this? Well, the court had already said no, and the Tennessee Supreme Court had said no. And then on appeal the second time, the Tennessee Supreme Court said, we're not going to revisit this.  So just as a matter of law, this court has already determined that he wasn't entitled to it. Well – Or that he didn't meet the APA standard. They didn't meet the APA standard. That's correct. That the state court's decision was. I mean, when I walked in here, I thought it was the same issue. But counsel's sort of arguing differently. He's saying it's not the same issue because one is a decision whether what he got was enough constitutionally. And the other is simply going to the resentencing phase without any expert. It's a different issue. I agree. But they're related. I mean, the petitioner's complaint about counsel's performance is that counsel should have asked again for an expert after he had asked previously at the trial on appeal and then again for a retrial and been denied. He should have asked one more time. And that's really what it boils down to. He should have asked again and said, well, what I really want is just the sentencing. You're admitting he should have. No, sir. I'm admitting. What I'm saying is that armed with this new decision of the Supreme Court, counsel made a strategic decision that this was the best way to present this to the state courts. To take it up on the Hockey case. To attack the entire conviction because the conviction wasn't final at that point. That was the choice that he made. That decision is not under attack here, the decision that's under attack. But that decision is what's under attack because that's the choice he made on how to deal with Hockey. He had it. This wasn't an uninformed decision. This wasn't an uninformed action to go into the resentencing without an expert. It was because he didn't have the money for it. And he had asked for the money over and over again, and when he went back on resentencing with Hockey in hand, he decided that the best way to use that case was to attack the whole conviction. But why? He was aware of the law and knew what he needed. If the judge didn't even make it clear why he denied the motion in the first place, then I don't understand how you, there's nothing conflicting between the two arguments. I mean, why don't you get, why go back to resentencing without some sort of an expert? Because he was already prepared to go forward. Well, number one, he didn't have the money, okay? He had asked for the money several times. But why not? Ask for it again just to see if they're going to say no again. No, because it's different now. Because Hockey says you have a right to an expert. But he presented that. He presented the Hockey argument. But there's a difference between saying, judge, vacate the conviction and give me a new trial, and say, judge, you know, I have this case now. I need you to pay for an expert for sentencing. Big difference. Well, again, I think this gets to the prejudice question. There's no way at this point to determine that the state court would have even granted that, because the court affirmed the denial on appeal. I have now become totally confused. My understanding is that Mr. Kissinger is not complaining about how counsel handled the aftermath of, I call it ache because I know someone who has that last name. But I don't know if that's correct. And that's how she pronounces it. But I don't know if that's right or not. He's complaining about the original resentencing in 1985, correct? Correct. So in how he handled the Hockey situation, ache is just not at issue. It is because it happened in between. The reason it's at issue is because Mr. Kissinger says that that's the case that should have made him go back and ask for the money again. That's the whole basis for his argument, that he should have gone back and asked for money. But he did. And he decided how he decided to handle that. Did he testify to that in the post-conviction, that it was a strategic decision, that he was going to try to win on appeal? He didn't, because that's why it's defaulted. The issue is defaulted. He didn't present this on post-conviction. He never had a chance. He did have a chance. He had state post-conviction. That was his chance. That was his chance. My question is this. Was ache decided before his resentencing? I thought it was decided afterwards. It was decided before. It was decided between the Tennessee Supreme Court's decision and the resentencing. I seem to be capable today of getting totally confused about what's happening when. Right. But, I mean, that's what it comes down to. So Mr. Olive did much like Mr. Kissinger did in this case. Mr. Kissinger's entire, his primary argument in his habeas corpus case was that he was entitled to funding under ache. That was, almost all of his eggs were in that basket. And that was, in fact, one of only two issues that came up. He actually found a motion for summary judgment on that issue. So Mr. Kissinger thought it was strong as well, just like Mr. Olive did. So Mr. Olive's conduct, to kind of summarize, in connection with the ache issue has got to be taken into account in considering whether he departed from any standard of professional conduct in connection with the resentencing. Yes. I mean, it's his conduct. But the resentencing had nothing to do with the ache decision. The resentencing related to another issue, correct? On which the Tennessee Supreme Court had sent the case back. The issue on which the resentencing was granted was different from the expert. That's what I understand. Yes. Yes, Your Honor. And then, just to refresh my recollection about, okay, so we had the case well after resentencing. Mm-hmm. And how did it, okay, all right. And we basically affirmed everything. And then after that, when we decided the case, Trevino had not yet been decided? This court had the case in 2010. This case was briefed in 2010. It was argued in 2011. Martinez was decided in March of 2012. This court decided the original case in September of 2012. So the case was actually before this court when Martinez came out. Okay. It was issued, yes. Now, we did have an ache claim in front of us. Correct. We rejected it. Correct. And did we hold, separately hold, that this claim was defaulted? That issue was not among the appeal issues because it was found to be procedurally defaulted below and there was no certificate of appealability. Sorry, say this again. The ineffective assistance claim, claim 13, was denied. Relating to resentencing, right? Related to counsel's performance at, related to counsel's failure to present an expert in resentencing. Okay. So it was there. It was defaulted, was found to be defaulted by the district court, and no certificate of appealability was granted on it. So it was resolved by default by the district court. It was not before this court. That was in the first habeas corpus case. First habeas corpus. So Martinez came out while this court still had the case. Petitioner made no effort during that time to raise any of his previously defaulted issues, IEC issues, and that was one of the bases that the district court found that there was a lack of diligence, that he didn't bring this to the attention of the court, and just by comparison, in the McGuire case, Mr. McGuire brought his Martinez decision, brought his Martinez claim in a Rule 60 motion five months after the case was issued. In an effort to get the timeline straight, when does Mr. Olive's approach to the trial court asking that the conviction be tossed out because of AIC, at what point does that occur in all of this? He filed that motion in April of 1985. Okay. AIC is decided when? AIC is decided in 1985. Earlier. Earlier in 1985. February of 1985. And when is the resentencing held? 1985. When? Later. It was that same year. After he'd already approached the state trial court again. Yes. When the case was remanded for resentencing, while the case was before the trial court, but before resentencing, AIC was decided, and Mr. Olive immediately went to the trial court and said, this is the exact issue that I had before, the judgment's not final, I would like for you to reconsider my earlier request in light of AIC. Does the judge give a reason to answer for rejecting that? Not that I know of. Again, I think it was without explanation. I think it was denied. Of course, the trial court probably would have been bound just because of the law of the case. It doesn't apply when you have an intervening decision. Well, I mean, it was . . . I mean, it's just questionary, and that's a reason for not following it. The trial court would have . . . Well, let me rephrase that. It wouldn't have been the law of the case. It would have been the mandate. The trial court wouldn't have had the authority to deviate from the Supreme Court's mandate. Okay, and then the Court of Appeals did address this, right? The State Court of Appeals? The Tennessee Supreme Court addressed it on the second appeal. They said, we've already ruled on it. We're not going to reopen this issue. We've already addressed it. And we said that the take was not clearly established law at the time the decision not to appoint an expert for Mr. Miller was made. That it wasn't an unreasonable application of clearly established law. Right. And we said that in 2012. Right. But in denying the motion in terms of the substantiality, what the district court found was, it looked at the record and said, Mr. Olive asked over and over again for an expert, was aware of the need for the expert, but was denied, and that the suggestion that somehow counsel was at fault for not asking again didn't amount to deficient performance. That real complaint had to do with the state court's denial of funding and that that can't be shifted to counsel in terms of a deficiency. So the district court found that it was not substantial for that reason. The district court also found that Petitioner wasn't diligent in presenting the claim because the claim was before this court when Martinez was decided, made no effort at that point to bring it to this court's attention or to otherwise reopen any of his defaulted claims. Trevino was decided the day that Petitioner's cert petition was denied, and yet Petitioner made no effort to seek a rehearing of that denial, and the court actually pointed to another Tennessee inmate who had done just that, so he used that as a basis to find that there was not a diligence in presenting the claim to the district court. The court found that, number three, that this was not a constitutional rule of law, which this court has already held. The court found that the public policy in favor of the finality of judgments weighed very heavily in the state's favor. The fact that this case was many, many years old, was actually more than 25 years old in terms of the finality of the judgment and had already been considered many times in both the state and the federal system. So the court considered many equitable factors beyond just a finding that the issue was not substantial under Martinez in determining that Rule 60 relief was not appropriate. And, again, that decision is reviewed for an abuse of discretion, and we think that under all of these circumstances, the district court's analysis was very thorough and considered an array of factors and certainly applied the appropriate rule of law. It was not based on any erroneous facts. So our position is that that decision is entitled to great deference by this court, that the court scrupulously applied the correct legal principles, and that the court should be condemned. Was it 18 months between Martinez and this motion or between Trevino and this motion? Or do I have the number of months wrong? Martinez was decided in, it was 18 months from, no, no, it was six months between Martinez and this decision. Martinez was decided six months before this court decided the original case. No, no, I'm saying the motion. What was the time between Trevino and this motion? The motion was filed in September of 2013, I believe. So there was a span. I think Trevino was released in, I believe, May of 2012, 2013. I'm sorry. So Martinez was March of 2012. This court decided this case in September of 2012. Trevino was decided in May of 2013, and Petitioner filed his Rule 60 motion in September of 2013, I believe. So that was it. Thank you. If there are no further questions, we ask that the court affirm the decision of the district court. Mr. Kissinger. Your Honor, perhaps just to clear up any confusion on timing, I wanted to really quickly address the sequence in terms of how quickly Mr. Miller came to this court. The oral argument in this case was on April 7th of 1911. On March 20th of 2012, Martinez was decided. In September of 2012, this court issued its opinion. In March of 2013, this court issued its decision in Hodges holding that Martinez did not apply to cases in Tennessee. On May 28th of 2013, Trevino is decided. In August of 1913, that would be 2013. I'm old, not that old. But of 2013, this court withdrew the controlling opinion in Hodges. August 14th, 2013. September 20th, 2013, Mr. Miller filed his 60B petition barely a month later. I'm concerned about a couple of things that were brought up during counsel's argument. The first is this idea that Mr. Olive somehow had some strategic plan to raise his aid claim only in connection with Guildface because he wanted that new trial and he didn't want to mess it up by asking for an expert in sentencing phase. I think I hear from the court's question that the court's fairly skeptical that that's an either-or kind of decision. I also want to point out to the court, Mr. Olive's affidavit is in the record. He specifically states he had no strategic basis and not the one that counsel appears to have constructed out of whole cloth. Well, does he say why he didn't? He does not say why he asked for an expert. He says that he failed to do so and he said he had no strategic basis for that. There was never a hearing, so we never really had an opportunity to delve into that. Can you have a hearing? We did not have an evidentiary hearing on the 60B motion. It was denied based on the pleadings. Yeah, but is it okay for you to have one? Your Honor, if the court were to reopen, it would be okay because then we would be dealing with a claim that had never been resolved by the state courts. That's another issue that I really don't want to get into because it's very complex. So Penhauser doesn't matter? It would not on remand, Your Honor. Again, one thing Judge Gibbons asked is qualifications, and I think it's at least a somewhat legitimate concern, although I'm not sure that Aik or Strickland or these kind of decisions are these kind of decisions about what trial counsel have evolved that much. As counsel for the state admitted, at the time of resentencing, Mr. Olive was perfectly aware that he needed to put on this kind of mitigating evidence. He knew that was his job and that he failed to do so. And you're basing that on his original request? On his original request, on the history of proceedings. He knew that mental health was an issue in this case. At the time of resentencing, he knew that unlike at the time of trial, he knew that Aik had been decided. He knew that he was entitled to the assistance of the expert provided for in Aik, and he didn't request one. Now, one thing to keep in mind, Your Honor. Had the expert. And, Your Honor, if we had an extensive discussion the last time this, the case was before the court about this independent expert versus court expert. One thing to keep in mind about Dr. Gee at the time of trial is Dr. Gee was not a mitigation expert at all. As counsel informed the court during her argument, she's correct. Dr. Gee was provided for the limited purpose of determining sanity and competency to stand trial. Not to determine mitigation. When Mr. Olive went to the court, and again, I don't want to get off on this tangent about whether it was an independent expert or not. When he came back to the court and said, hey, I need an expert to help me prepare for the penalty phase. Dr. Gee's testimony was heard in the original guilt phase, and he said that your client was not insane under the legal criteria. That is an accurate description of his testimony, Your Honor. And you're saying, okay. Did you just say that at the first sentencing, Mr. Oliver said to the court, okay, my client's convicted. We're about to have resentencing, and I need an expert. I'm entitled to an expert. This Dr. Gee is not a mitigation expert. No, Your Honor. What happened is that, and I don't, if I recall the timing correctly, that request was made before trial. He says, yes, we've got Dr. Gee's report, but I need a mitigation expert, and the court said no. Now, why the court said no, maybe it was because he was asking for an independent, I don't know. So before trial, counsel said, I have Dr. Gee's report, and there's no mitigation testimony in there. Well, I mean, that isn't in his motion. He says, yes, we have Dr. Gee's report. Now I need a mental health expert to assist me at trial, at sentencing. I just want to get this. So he says that before trial, and the judge just says no. Do you think that AIC is establishing the proposition that every defendant is entitled to a mental health expert, or is AIC establishing the principle that if the court appoints a mental health expert, the state has to pay for it? Does the trial court retain any discretion with respect to whether the expert should be appointed? No, I think what AIC, it's not an automatic thing, Your Honor, and we actually had this discussion before. What AIC says is if mental health is in question, then you're not just automatically you get one, if mental health is in question. So if Mr. Olive understood it that way and was guided by that, that would not be any deficiency in his performance? No, it absolutely would be a deficiency in his performance because clearly mental health was at issue in this case. From that standpoint, yes. But from the standpoint of being guaranteed the counsel, not necessarily. Yes. AIC holds that if mental health is an issue, you are guaranteed, the Constitution requires that you be provided with a mental health expert. Yes, that's what AIC holds. It may hold that, but what it more specifically holds is that the state has to pay for it. Which is, that may be the case, but that is not the core holding of AIC. Well, even if AIC holds that, it also holds that you're entitled to. I initially understood you to tell me that it wasn't automatic. And now you seem to be telling me that it is. Well, Your Honor, let me clarify that. The defendant has to make the showing that the mental health is at issue. That's the not automatic aspect. But that showing had failed previously before this judge. Your Honor, it failed previously before AIC was decided. When it was brought, when the motion was made to this judge, before, AIC had not been decided. We cannot forget the fact that AIC was decided. When Mr. Olive went back to resentencing, he had the right to have that and didn't exercise it. I see that my time is very short. I was going to ask you this. What you're basing this case on is you're saying that post-conviction counsel was ineffective for failure to raise the issue of ineffective assistance of counsel at sentencing. And that's obviously part of the Martinez claim, Your Honor. And in that aspect. It's the only way you could bring it up. You have to bring it up. Right. Absolutely, Your Honor. And to that extent, it kind of goes to our counsel's cynicism. And Mr. Kissinger never brought that claim here and said, Mr. Kissinger didn't bring that claim because it was never presented in state court, which was the reason it was procedurally barred. It wasn't presented in state court because for the reasons stated in post-conviction counsel's affidavit, it wasn't raised. He was ineffective in failing to raise the claim. Again, Your Honor, I think it's important to remember in this case that, and I wish we could have talked about those opinions. The Court's now aware of the expert opinions. What's contained in those opinions is not slight amounts of mitigating evidence. It's overwhelming evidence of mitigation. The expert opinions undercut the only aggravator that the jury found. They add weight to the only mitigator that they were instructed on. And they establish the mitigator that counsel wanted to have presented, but was denied because he had failed to present the very evidence which is contained in those affidavits. What is contained in those affidavits would have caused a reasonable juror. There is a reasonable possibility that a juror, upon hearing that evidence, about hearing the unspeakable background that Mr. Miller went through, upon hearing the profound mental diseases he suffered as a result of that, would have come back in this case, in this case where they rejected two aggravating factors and only found one, and returned a sentence of life. You know, in order to evaluate this case properly, assume you're correct about deficiency. We've still got to assess prejudice in deciding whether there's anything extraordinary, whether, you know, you've shown the proper equitable circumstances. And that means we'd have to go back and consider exactly what the crime was in this case and what the evidence of . . . And I think that's appropriate. And I think that, given that, the court mentioned the fact that we have to show the other equities. In fact, the other equities are established here. I think we've already discussed the diligence. Mr. Miller's diligence was at least on a level of Mr. Thompson, where Mr. Thompson was found diligent even though he brought his motion long after the state law changed after it. The other factor that counsel mentioned is this weight of . . . their weight and finality. The district court attributed a lot of weight to that, extra weight to that, because of an execution date. That execution date was not sought until after Mr. Miller filed his petition. And it was not scheduled until 10 months after the court denied relief. I think you're straying from the answer to the question. I just have . . . Okay. I'm sorry, Your Honor. And how was it . . . again, we probably asked this before. How did he get the money for these affidavits, the subsequent experts? Those were provided by our office, Your Honor. Once the federal defender is appointed, then you all have funds for . . . We are funded, Your Honor, yes. So resources become much less a problem. Although, given what Ake said, resources wouldn't have been a problem if trial counsel had, in fact, made . . . requested the expert that he was entitled at the time of trial. All right. We appreciate the argument both of you have given. Thank you very much. We'll, as always with these cases, consider it very carefully.